IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DALIA MOHAMMED, )
    Petitioner, )
 )
v. ) Civil Action No. 1:09cv1284
 )
ERIC H. HOLDER, *et al.*, )
    Respondents. )

## MEMORANDUM OPINION

The threshold jurisdictional question in this immigration case is whether a district court must grant a writ of mandamus ordering the U.S. Customs and Immigration Service ("USCIS") to adjudicate an application for adjustment of status where the USCIS has already administratively closed the application. For the reasons stated here, the petition does not present a justiciable case or controversy and therefore respondents' motion to dismiss must be granted.

I.

The material facts relating to the petition for a writ of mandamus are not disputed by the parties.[1]

Petitioner is a native and citizen of Sudan currently residing in the United States. The named respondents are the following federal government officials, all of whom jointly filed the

---

[1] The facts stated herein are those derived from the petition and respondents' exhibits attached to their supporting memorandum, which exhibits are appropriately considered on a motion to dismiss pursuant to Rule 12(b)(1), Fed. R. Civ. P., for lack of subject matter jurisdiction. *See Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004) ("Generally, when a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.").

-1-

motion to dismiss at bar: (i) Eric H. Holder, U.S. Attorney General; (ii) Janet Napolitano, Secretary of the Department of Homeland Security ("DHS"); (iii) Sarah Taylor, Director of the USCIS Washington Office; and (iv) Alejandro Mayorkas, Director of USCIS.

Petitioner entered the United States on June 21, 1996, using a valid B-2 visitor visa that expired on December 20, 1996.[2] Petitioner did not leave the United States prior to the expiration of her B-2 visa; rather, she remained in the United States and on March 17, 1997, filed an I-589 Application for Asylum and Withholding of Deportation with the Immigration and Naturalization Service ("INS").[3] In her I-589 application, petitioner claimed that she feared persecution in Sudan because of her political beliefs. *See* Defs. Ex. 1.

Approximately one year later on March 27, 1998, petitioner's asylum and withholding of removal application was referred to an immigration judge following an interview regarding her application.[4] On April 8, 1998, petitioner was given oral notice to appear before an immigration judge on June 10, 1998 because the INS believed she had overstayed her B-2 visitor visa without INS authorization and was therefore subject to removal from the United States under certain provisions of the Immigration and Nationality Act ("INA"). *See* Defs. Ex. 2 (recording oral notice on Form I-862). In a February 24, 1999 oral decision, the transcript of which is

---

[2] Visitor visas are governed in party by 8 C.F.R. § 214.2(b)(2), which states that "[a]ny B-2 visitor who is found otherwise admissible and is issued a Form I-94, will be admitted for a minimum period of six months."

[3] *See generally* 8 U.S.C. § 1158 (authorizing applications for asylum in certain circumstances).

[4] An immigration judge is an administrative judge within the Department of Justice's Executive Office of Immigration Review ("EOIR"). *See generally* 8 C.F.R. §§ 1003.0-1003.47 (establishing and empowering EOIR, Board of Immigration Appeals, and Immigration Courts).

memorialized in a written order, the immigration judge denied petitioner's application for asylum because she failed to prove by clear and convincing evidence that she had a well-founded fear of persecution within the meaning of the INA. Significantly, the immigration judge also denied petitioner's application for withholding of removal, but allowed petitioner to depart the United States voluntarily at her own expense by April 26, 1999, in lieu of removal. *See* Defs. Ex. 4.

Petitioner appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA").[5] In a May 21, 2003 *per curiam* decision, the BIA affirmed the immigration judge's decision to deny petitioner's application on the ground that her immigration history and allegation of prior detention in Sudan did not evidence a fear of political persecution as defined by the INA. *See* Defs. Ex. 5. Accordingly, petitioner was afforded thirty days in which to depart the United States voluntarily, which she failed to do. Additionally, she failed to appeal the BIA decision to the Fourth Circuit Court of Appeals.[6]

On June 11, 2001, during the pendency of the BIA appeal, petitioner's husband—a naturalized U.S. citizen as of 2000, whom petitioner married in 1997—filed an I-130 Petition for Alien Relative *pro se* with the USCIS. *See* Defs. Ex. 3. An I-130 petition, which is filed by a lawful permanent resident or U.S. citizen, only establishes the relationship between the I-130 petitioner and an alien relative seeking an immigrant visa or permanent residency; it does not

---

[5] *See generally* 8 C.F.R. §§ 1003.1, 1003.3 (governing appeals to BIA).

[6] *See* 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review.").

change an alien's status.[7] Although the I-130 petition was approved on December 20, 2001, petitioner did not apply for adjustment of status or file additional immigration documents with the USCIS for four years. Significantly, petitioner also did not advise her immigration attorney, the immigration judge, or the BIA of either (i) her 1997 marriage to a then-permanent resident who was thereafter naturalized in 2000, or (ii) the successful I-130 petition. Only the USCIS, by virtue of adjudicating the I-130 petition, was aware of petitioner's marriage to a U.S. citizen.

Thus, to recapitulate briefly, as of mid-2003 petitioner was: (i) subject to a voluntary order of removal that had been affirmed by the BIA but had not been appealed to the Fourth Circuit; and (ii) had been afforded the right to apply for an adjustment of status or immigrant visa, but did not file such a petition. Instead of voluntarily departing the United States or applying for an adjustment of status, petitioner remained unlawfully in the United States. Petitioner did not acquire temporary lawful immigrant status until 2005, when she applied for, and was granted, Temporary Protective Status ("TPS") by the Secretary of DHS.[8] *See* Defs. Exs. 6, 7. This status ensures, for the duration of petitioner's TPS, that she will not be removed from

---

[7] *See Der-Rong Chour v. Immigration & Naturalization Serv.*, 578 F.2d 464, 467 (2d Cir. 1978) ("Judge Griesa pointed out that the granting of an I-130 application simply verifies that the applicant is married to a resident of the United States, but does not change his status or provide him with a visa or any right to reside in the United States."); *Piper v. Crosland*, 519 F. Supp. 962, 965 (E.D.N.Y. 1981) ("It is clear that a non-resident alien who has overstayed his visa has no constitutional or statutory right to remain in this country while a relative petition is being adjudicated.").

[8] Under 8 U.S.C. § 1254a, originally the Attorney General was authorized to designate any foreign state for TPS due to conditions that temporarily prevent a country's nationals from returning safely, such as armed conflict or natural disasters. Congress transferred this power from the Attorney General to the Secretary of DHS as of March 1, 2003. *See* Homeland Security Act of 2002, Pub. L. No. 107-296 § 1517, 116 Stat. 2135, 2311 (codified at 6 U.S.C. § 557). Petitioner's native country, Sudan, was granted TPS in 2004. *See* 74 Fed. Reg. 69355, 69356 (Dec. 21, 2009).

the United States and that she is eligible to apply for work authorization. *See* 8 U.S.C. § 1254a(f). Petitioner's current TPS and work authorization is set to expire in May 2010, although it is renewable until Sudan's current TPS designation expires in 2011, at which time the Secretary of DHS may re-designate Sudan as a TPS country.

Not until January 5, 2006,[9] four years after the I-130 petition was granted, did petitioner file an I-485 application for adjustment of status with the USCIS. *See* Defs. Ex. 8. It is this application that is the subject of the petition for a writ of mandamus. In the course of a September 21, 2006 USCIS interview regarding her I-485 application, petitioner revealed that she had previously been subject to a removal order by an immigration judge.[10] Based on this information, the USCIS by letter dated October 2, 2006, advised petitioner that her application had been administratively closed. Specifically, the letter states:

> A complete review of the records of this Service indicates that you are in removal proceedings.
> Title 8 Code of the Federal Regulation [sic], Part 245.2(a)(1) states that:
>> After an alien is in deportation or removal proceeding [sic], his or her application for adjustment of status shall be considered only in those proceedings.

---

[9] A review of the I-485 reveals that petitioner signed the I-485 in February 2002, but did not file the document until 2006. *Compare* Defs. Ex. 8, at 1 (bearing USCIS date stamp of January 5, 2006), *with id.* at 6-7 (indicating that petitioner signed certain documents on February 11 and 13, 2002).

[10] It is worth noting that petitioner's involvement in removal proceedings was not disclosed by petitioner's husband on the I-130 petition. Specifically, item 16 on the I-130 asks whether the I-130 petitioner's alien relative—*i.e.*, petitioner—has "ever been under immigration proceedings." Petitioner's husband answered in the affirmative and wrote "VA" and "3/24/99," information corresponding to petitioner's appearance before the immigration judge, but he checked none of the boxes that indicate the immigration proceeding was for exclusion, rescission, judicial proceedings, or, significantly here, deportation. Whether the disclosure of this information would have made the approval of the I-130 petition improper need not be reached or addressed, as it is immaterial to the dispositive jurisdictional issue at bar.

> Since the immigration court has sole jurisdiction over your case, your Application to Register Permanent Residence or Adjust Status is hereby administratively closed. No further action will be taken on the application.

Defs. Ex. 9. Notably, the letter further advises petitioner that although no appeal may be taken from the USCIS's decision to close her application for adjustment of status administratively, petitioner may file a "motion to reopen" her removal proceedings with the BIA, which would allow adjudication of her application for adjustment of status by an immigration judge.

Consistent with this advice, petitioner filed a motion to reopen with the BIA in April 2007. In support of her motion, petitioner filed a memorandum acknowledging that the motion, filed more than 90 days after the BIA affirmed the immigration judge's order, was untimely. Further, petitioner conceded that no exceptional circumstances justified her motion, but argued that the BIA should nonetheless reopen the proceeding *sua sponte*. See Defs. Ex. 10. The BIA, recognizing that it had the discretion to reopen proceedings, elected not to do so, denying petitioner's motion in a June 5, 2007 *per curiam* opinion that states, in pertinent part:

> The sole explanation provided by the respondent for failing to raise her eligibility for adjustment in a timely motion to reopen is her own failure to inform her attorney of this fact. However, she has not stated why she waited almost four years since the Board's decision to submit the instant motion. The respondent's failure to diligently pursue [sic] her own claim does not merit an exercise of this Board's sua sponte authority. We further note that our discretion to reopen sua sponte is limited to cases where exceptional circumstances are demonstrated. The respondent's eligibility for legal status in this country and failure to diligently pursue [sic] her case do not constitute exceptional circumstances warranting our consideration of an untimely motion.

Defs. Ex. 11 (internal citations omitted).

As before, petitioner did not appeal the BIA's decision to the Fourth Circuit Court of

Appeals.[11] Instead, petitioner waited until November 11, 2009—more than 29 months after the BIA denied her motion to reopen her deportation proceeding—to file the instant petition for a writ of mandamus in federal district court.[12] Shortly thereafter, respondents filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P. Although petitioner did not file an opposition brief, counsel for both petitioner and respondents appeared at a February 26, 2010 hearing, at which time the matter was fully argued.[13] Accordingly, respondents' motion to dismiss is ripe for disposition.

## II.

Petitioner seeks a writ of mandamus ordering the USCIS to adjudicate her adjustment of status application, which the USCIS administratively closed on October 2, 2006. In her petition, she claims that jurisdiction is proper in federal court under the mandamus statute, 28 U.S.C. § 1361, and the federal question statute, 28 U.S.C. § 1331, as well as judicial review provisions of the Administrative Procedure Act ("APA") that authorize courts to "compel agency action unlawfully withheld or unreasonably delayed," see 5 U.S.C. § 706(1). In their motion to dismiss,

---

[11] See 8 U.S.C. § 1252(a)(5); Lee v. U.S. Citizenship & Immigration Servs., 592 F.3d 612, 620-21 (4th Cir. 2010) (discussing availability of judicial review of removal proceedings in the courts of appeals).

[12] Prior to the filing of this suit, petitioner on January 26, 2009 sent a letter to the USCIS requesting that the agency reverse its decision to close petitioner's application administratively and either approve or deny the application. The record does not reflect whether the USCIS responded to this letter.

[13] On February 22, 2010, respondents filed a notice of failure to prosecute because petitioner's counsel failed to file an opposition brief. In the course of oral argument, petitioner's counsel explained that he had prepared a timely brief, but elected not to file it because he realized that he had misunderstood respondents' position. Yet, rather than file a request for an enlargement of time, petitioner's counsel simply elected to file nothing and instead appeared at oral argument to present petitioner's position orally.

respondents make three alternative arguments: (i) that the relief sought by petitioner is moot and hence does not present a justiciable case or controversy; (ii) that Congress has stripped federal courts of their jurisdiction to order writs of mandamus where, as here, an applicant for adjustment of status has been involved in a deportation proceeding before an immigration judge, where exclusive jurisdiction lies; and (iii) that petitioner cannot establish her entitlement to a writ of mandamus.

A.

With respect to respondents' mootness argument, it is well-settled that federal courts may only adjudicate cases or controversies under Article III of the Constitution. *See Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997) ("One of the bulwark principles of constitutional law is the 'cases' or 'controversies' requirement for justiciability referred to in Article III."). To that end, "[t]he Supreme Court has developed a number of constitutional justiciability doctrines from the text of Article III, Section 2, including the prohibition against advisory opinions, the political question doctrine, and the doctrines of standing, ripeness, and mootness" in order to preserve the constitutionally mandated separation of powers, conserve judicial resources, improve judicial decisionmaking by requiring concrete controversies, and promote fairness by generally prohibiting the adjudication of the rights of parties not before a court. *United States v. McClure*, 241 F. App'x 105, 107 (4th Cir. 2007); *see also* Erwin Chemerinsky, *Constitutional Law* 50-52 (3d ed. 2006). Consistent with these general principles, the mootness doctrine requires that a claimant suffer an injury-in-fact or continuing collateral consequence that is fairly traceable to the challenged action or decision, and that a favorable decision would be likely to redress the injury. *See Townes v. Jarvis*, 577 F.3d 543, 554 (4th Cir. 2009).

In this case, the petition for a writ of mandamus is moot because the USCIS has already adjudicated petitioner's application for adjustment of status to the extent permissible under binding federal regulations. *See Akinmulero v. Holder*, No. 09-20193, 2009 U.S. App. LEXIS 21113, at *4-*5 (5th Cir. Sept. 23, 2009) (affirming district court's determination that alien's petition for writ of mandamus ordering USCIS to adjudicate application for adjustment to status was moot following administrative closure). Indeed, the USCIS's October 6, 2006 letter decision expressly states that the application has been administratively closed and that "[n]o further action will be taken on the application" because the USCIS lacks jurisdiction to grant or deny the application. Defs. Ex. 9. This jurisdictional statement is correct, as the Code of Federal Regulations states that "[i]n the case of any alien who has been placed in deportation proceedings . . . the Immigration Judge hearing the proceeding has *exclusive jurisdiction* to adjudicate any application for adjustment of status the alien may file."[14] If follows that the USCIS's administrative closure of petitioner's application is not a legally cognizable injury-in-fact that a favorable decision here would redress. *See Townes*, 577 F.3d at 554 (enumerating factors making claim moot). Accordingly, because the petition is moot and fails to present a justiciable

---

[14] 8 C.F.R. § 1245.2(a)(1) (emphasis added); *see also id.* § 245.2(a) ("USCIS has jurisdiction to adjudicate an application for adjustment of status filed by any alien, unless the immigration judge has jurisdiction to adjudicate the application under 8 CFR 1245.2(a)(1)."); *Rotimi v. Holder*, 577 F.3d 133, 134 n.2 (2d Cir. 2009) (per curiam) ("Once an order to show cause had been issued in Rotimi's case, the [immigration judge] acquired exclusive jurisdiction to adjudicate Rotimi's application for adjustment of status in deportation proceedings."); *Perez-Vargas v. Gonzales*, 478 F.3d 191, 194 (4th Cir. 2007) (recognizing that "[t]he Attorney General has . . . vested [immigration judges] with exclusive jurisdiction over applications for adjustment of status" in cases of deportation or removal); *Wellington v. INS*, 108 F.3d 631, 635 (5th Cir. 1997) ("INS practice requires that aliens who have been found deportable in deportation proceedings seek adjustment of status through the mechanism of reopening their deportation proceedings.").

case or controversy, it must be dismissed.

In response, petitioner makes two arguments: (i) that the USCIS's decision to close her application administratively is inappropriate and therefore the USCIS is required to grant or deny the application; and (ii) that petitioner's TPS status allows the USCIS to adjudicate her application for adjustment of status despite her involvement in prior removal proceedings before the BIA and the Immigration Courts. Neither argument is persuasive.

To begin with, as noted *supra*, the USCIS clearly lacks jurisdiction to adjudicate petitioner's application for adjustment of status, and therefore the USCIS can neither grant nor deny petitioner's application without exceeding its jurisdiction because to do so would impermissibly address the merits of petitioner's application. The only action available to the agency is to close and dismiss petitioner's application administratively, leaving adjudication of the merits of her application to the BIA and Immigration Courts where jurisdiction is proper. *Cf. United States v. Baxter*, 19 F.3d 155, 156 (4th Cir. 1994) ("Because we decide that this Court lacks jurisdiction to review the decision of either the district court or the magistrate judge, we do not reach the merits of this appeal" and accordingly dismiss the appeal). Moreover, in her petition and in other memoranda filed with the USCIS and BIA, petitioner has argued that the USCIS's administrative closure amounts to an improper "administrative hold" that prevents the BIA from reopening her case. Yet, petitioner identifies no statute, regulation, or decision that supports her position. To the contrary, the USCIS decision makes clear that no "hold" is in place, as "no further action will be taken on the application," and indeed the decision expressly invites petitioner to properly seek adjustment of status with the BIA and in the Immigration Courts by filing a motion to reopen. *See* Defs. Ex. 9.

Petitioner's argument with respect to her TPS status is also incorrect. Specifically, petitioner relies on a statutory provision enumerating the benefits of TPS status, which benefits include the fact that "for purposes of adjustment of status under section 1255 of this title and change of status under section 1258 of this title, the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. § 1245a(f)(4). Whatever effect this provision may have on the merits of petitioner's application for adjustment of status, it has no relevance to the dispositive question here, namely whether the USCIS—rather than the BIA or Immigration Courts—has *jurisdiction* to adjudicate the merits of petitioner's application. Thus, although petitioner's argument may be appropriately addressed to the BIA and Immigration Courts, which have sole jurisdiction to reopen petitioner's removal proceedings and adjust her status, this argument is immaterial here as petitioner seeks a writ of mandamus against the USCIS.

**B.**

Although it is unnecessary to reach or resolve respondents' two additional, alternative arguments against issuance of a writ of mandamus, both are correct. Respondents' first alternative argument—namely that a district court lacks statutory jurisdiction to grant the requested relief—is clearly correct. No federal statute—not the federal question statute, not the mandamus statute, not the declaratory judgment statute, nor the APA—can operate to confer jurisdiction here in light of the INA's broad jurisdiction-stripping language, which expressly overrides all other grants of jurisdiction: "Notwithstanding *any other provision of law* (statutory or nonstatutory) . . . no court shall have jurisdiction to review—(i) any judgment regarding the granting of relief under section . . . 1255 of this title [governing adjustment of status]." 8 U.S.C.

§ 1252(a)(2)(B)(i) (emphasis added). Notably, § 1252(a)(2)(B) specifically withdraws the jurisdiction conferred by the mandamus statute. *See id.* (rendering 28 U.S.C. § 1361, the mandamus statute, inapplicable).[15] Furthermore, the Fourth Circuit has recently emphasized in an immigration case concerning § 1252(a)(2)(B) that the APA—which looks to the federal question statute for jurisdiction, as "it is not [itself] a jurisdiction-conferring statute"—does not support judicial review of adjustment of status decisions because the "basic presumption of judicial review of final agency action" is overridden by the INA's jurisdiction-limiting provision. *Lee v. U.S. Citizenship & Immigration Servs.*, 592 F.3d 612, 618-20 (4th Cir. 2010) (citations and internal quotation marks omitted).

Respondents' second alternative argument is also correct; petitioner cannot satisfy the requirements for a writ of mandamus. Specifically, mandamus "may be invoked only where three elements co-exist: (1) the petitioner has shown a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available." *In re First Fed. Sav & Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1988) In this case, the USCIS has no clear duty to adjudicate petitioner's application for adjustment of status, and indeed, as discussed *supra*, the governing jurisdictional regulations preclude the USCIS from doing so. *See* 8 C.F.R. §§ 245.2(a), 1245.2(a)(1). Moreover, petitioner has no clear right to the relief sought. *See Elkins v. Moreno*, 435 U.S. 647, 667 (1978) ("[A]djustment of status is a matter of grace, not right.").

---

[15] *Cf. Estate of Michael v. Lullo*, 173 F.3d 503, 506 (4th Cir. 1999) ("Though the Mandamus Act grants district courts jurisdiction over any suit seeking mandamus, it does not override the Anti-Injunction Act, . . . [which] withdraws all courts' jurisdiction over suits filed 'for the purposes of restraining the assessment or collection of any tax.'").

## III.

In sum, the petition for a writ of mandamus ordering the USCIS to adjudicate petitioner's application for adjustment of status is moot because the USCIS has already administratively closed and dismissed her application consistent with its lack of jurisdiction. Additionally, it is clear that the INA's jurisdiction-limiting provisions preclude issuance of a writ of mandamus, and that petitioner cannot satisfy the requirements for a writ of mandamus. Accordingly, the petition for a writ of mandamus must be dismissed.

An appropriate Order shall issue.

Alexandria, Virginia
March 1, 2010

T. S. Ellis, III
United States District Judge